IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EZEKIEL DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIV-12-330-HE |
| v. | ) |
| | ) |
| CARL BEAR, et al., | ) |
| | ) |
| Defendants. | ) |

SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983. In his Complaint filed March 27, 2012 (Doc. #1), Plaintiff seeks damages from nine Oklahoma state correctional officials. He alleges the Defendants used excessive force and that retaliatory measures were taken against him at Oklahoma State Reformatory ("OSR"), where he was previously incarcerated, after he sought a temporary restraining order against Defendant Bear in another pending § 1983 action filed by Plaintiff. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). Before the undersigned is the Motion to Dismiss filed by Defendant Lawson (Doc. # 26), to which Plaintiff has responded (Doc. # 29). For the following reasons, it is recommended that Defendant Lawson's Motion to Dismiss be granted and that the cause of action against Defendant Lawson be dismissed with prejudice.

1

I. <u>Background and Claims</u>

Plaintiff is incarcerated in the custody of the Oklahoma Department of Corrections ("ODOC").  In his Complaint filed March 27, 2012, Plaintiff states that he is confined at the Oklahoma State Reformatory ("OSR") located in Granite, Oklahoma.  In his Complaint, Plaintiff names as Defendants OSR officials Mr. Bear, "Capt. Duty," "Capt. Hendericks," "Lt. Barber," "Chief of Security Tate," OSR Warden McCollum, OSR's law librarian Ms. Bethea, ODOC's Department of Internal Affairs administrator Mr. Blevins, and Oklahoma Assistant Attorney General ("AAG") Lawson.  In count one, Plaintiff alleges a violation of his First Amendment right of access to the courts by Defendants Bear and Bethea.  Plaintiff also alleges in count one that Defendants Bear and Bethea conspired to deny him access to the courts and retaliated against him for seeking a restraining order against Defendant Bear in another § 1983 action.

In count two, Plaintiff alleges that his Eighth Amendment rights were violated when Defendants Duty, "Capt. Hendericks," Barber, and Bear used excessive force on Plaintiff on February 14, 2012.  He alleges in count two that Defendants Bear, Bethea, "Capt. Hendericks," Barber, McCollum, and Tate conspired to use excessive force upon Plaintiff in retaliation for Plaintiff seeking a restraining order against Defendant Bear in another § 1983 action "pending . . . in the Eastern District." Complaint, at 9.

In count three, Plaintiff alleges a deprivation of his Fourteenth Amendment due process rights concerning a misconduct proceeding conducted at OSR.

All of the claims set forth in the Complaint are based on the same underlying incident.

Plaintiff alleges that on February 14, 2012, he went to the facility's law library and asked the inmate law clerk working there "for a disbursement because I needed copies and postage to send out legal mail." Complaint, at 4.  Plaintiff asserts that the inmate law clerk informed Plaintiff that Defendant Bear, who was also present in the law library, would not allow the inmate to make copies of the documents for Plaintiff.  Plaintiff contends Defendant Bear then advised Plaintiff that no copies would be made for Plaintiff at the law library.  Plaintiff states that he waited about 45 minutes and then returned to the law library and asked Defendant Bear "when will Ms. Bethea be coming back," at which time Defendant Bear called for correctional officers to remove Plaintiff from the law library.  Plaintiff alleges that Defendants "Capt. Duty" and "Lt. Barber" arrived thereafter at the law library and directed Plaintiff to "cuff-up." Plaintiff alleges that he placed his hands on the counter whereupon the two officers grabbed his hands and twisted his arms behind his back in a rough manner.  Plaintiff alleges the officers "kept on twisting my wrist so I told them since they are trying to hurt me I'm going to sit on the floor until they bring the camera." Complaint, at 4.  Plaintiff contends he sat down and another officer, "CO. Frazier" arrived with the camera.  Plaintiff alleges that "Capt. Duty called Capt. Hendericks over to take my left arm" and that

> Capt. Hendericks grabbed my left arm and Lt. Barber was holding my right arm, they both pulled me up by my arms and twisted my wrist when I refused to stand, because I was talking into the camera asking why was I being treated this way because I wanted copies.  Capt. Hendericks and Lt. Barber twisted my wrist so hard that I yelled out in pain and when I told them to stop, Capt. Hendericks and Lt. Barber twisted my wrist again so hard that I yelled out in pain again.

3

Complaint, at 4-5. Plaintiff alleges he asked why the officers were using excessive force and the officers then lifted his arms up toward his head and pushed Plaintiff toward the door. He alleges that Defendant Tate arrived and that Defendant Tate then retrieved Plaintiff's "legal papers" and "we all went back inside and the copies where [sic] made." Complaint, at 5. Plaintiff alleges the handcuffs were removed by Capt. Duty after Plaintiff was returned to his cell, that he was then escorted to the medical unit of the facility by several officers, and that after he was treated at the medical unit he was then escorted to the segregation housing unit.

Plaintiff alleges in the jurisdictional section of the Complaint that Defendant Bear had "been retaliating against [Plaintiff] for months" because Plaintiff requested a temporary restraining order "against him" in another case.[1]

Plaintiff further states that "less than a week" before the incident alleged by Plaintiff he mailed a letter to Defendant Blevins in which he "complain[ed] about how [Mr.] Bear had threatened me in the kitchen that he would tell the neighbhood [sic] crips about when I stabbed one of their leaders back in 2004 when eight (8) gang members robbed me on B-Unit at knife point." Plaintiff alleges that Defendant Blevins responded to Plaintiff that Plaintiff's letter had been "passed . . . to the Division of Institutions." Complaint, at 3. Plaintiff surmises, however, that Defendant Blevins "may have told someone at OSR about the letter that I wrote to him."

---

[1] Plaintiff identifies this case only as "Davis v. Jones et al. 04-7087." In Tenth Circuit Court of Appeals Case No. 04-7087, Plaintiff appealed a decision entered against Plaintiff in the United States District Court for the Eastern District of Oklahoma, and the Tenth Circuit affirmed the district court's dismissal of his action for failure to exhaust administrative remedies in April 2005. Davis v. Mullin, 125 Fed.Appx. 972 (10th Cir. April 20, 2005)(unpublished order). Nothing in the appellate court's decision indicates that Plaintiff had sought a temporary restraining order against any correctional official in that matter.

Id.

II. <u>Plaintiff's Allegations Concerning Defendant Lawson</u>

Plaintiff alleges in the portion of his Complaint describing the Defendants that Defendant Lawson, in her capacity as an Oklahoma Assistant Attorney General, has represented other state officials in a pending action filed by Plaintiff "against the Corrections Corporation of America and the Department of Corrections and she knows Plaintiff has been harassed by a number of staff at the Oklahoma State Reformatory (OSR) because Plaintiff has filed a [motion seeking] a restraining order, and before this incident Plaintiff had filed another [motion seeking a] restraining order on Carl Bear for making threats to have me harmed by gang-members."

Plaintiff alleges Defendant Lawson is being sued in her individual and official capacities "for knowing of the harm [Defendant OSR Warden's Assistant] Bear could do to me and did nothing to prevent his retaliation, and . . . she <u>may</u> have told [Defendant] OSR Acting Warden Tracy McCollum about the restraining order [Plaintiff sought in his other §1983 action] and [Defendant] McCollum <u>may</u> have told [Defendant] Bear, however [Defendant] Bear found out and retaliated and staff placed me in [OSR's] SHU [sic] claiming I threatened them when on February 14, 2012 the Defendants herein attacked me, thus violating my unalienable [sic] rights when I was placed in disciplinary segregation." Complaint, at 2.

In count two of the Complaint, Plaintiff alleges that Defendant "Carl Bear found out from either re-opening my legal mail out-side of my presence, or he was told by either Johnny

5

Blevin or Stefanie Lawson, Assistant Attorney General. I am alleging this because I had just filed for a restraining order in my pending case that was in the Tenth Circuit at the time this incident took place, but has since been reversed and remanded back to the Eastern District." Complaint, at 6-7. In his responsive pleading, Plaintiff speculates that, as to Defendant Lawson and Defendant Blevins, "one of these Defendant[s] had to tell Defendant Carl Bear in order for him to retaliate" against Plaintiff. Response, at 3.

III. Statutory Screening of Prisoner Complaints

The Court must screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or any portion of it presenting claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 806 (10th Cir. 1999).

"The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247-1248 (10th Cir. 2008)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A *pro se* plaintiff's complaint must be broadly

construed under this standard. Haines v. Kerner, 404 U.S. 519, 520 (1972).

IV. Eleventh Amendment Immunity

With respect to Plaintiff's claims against Defendant Lawson in her official capacity, Defendant Lawson moves for dismissal pursuant to 28 U.S.C. § 1915A(b)(1) and (2) or Fed. R. Civ. P. 12(b)(6) on the ground of Eleventh Amendment immunity. See Ruiz v. McDonnell, 299 F.3d 1173, 1180-1181 (10th Cir. 2002)(Eleventh Amendment immunity defense is challenge to federal court's subject matter jurisdiction). The Eleventh Amendment bars an action for money damages in federal court against a state by the citizens of that state. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). This immunity extends to actions against a state agency, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984), and to state officials acting in their official capacities. Edelman v. Jordan, 415 U.S. 651, 662-663 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 and n. 10 (1989). Accordingly, Defendant Lawson in her official capacity, as an employee of the State of Oklahoma, is immune from Plaintiff's claims seeking monetary damages. See Eastwood v. Dep't of Corr. of State of Okl., 846 F.2d 627, 631 (10th Cir. 1988)("[T]he DOC is an arm of the state and should be entitled to [Eleventh Amendment] immunity."). Therefore, Defendant Lawson's Motion to Dismiss seeking dismissal of Plaintiff's claims against her in her official capacity should be granted.

V. <u>Absolute Prosecutorial Immunity</u>

Defendant Lawson also seeks to be dismissed from the action in her individual capacity on the basis of absolute prosecutorial immunity. A prosecutor is entitled to absolute immunity concerning advocacy-related decisions in initiating a prosecution and presenting the State's case. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430-431 (1976); <u>Gagan v. Norton</u>, 35 F.3d 1473, 1475 (10th Cir. 1994)("State prosecutors are entitled to absolute immunity against suits brought pursuant to § 1983 for activities intimately associated with the judicial process, such as initiating and pursuing criminal prosecutions")(quotations omitted), <u>cert. denied</u> <u>sub nom.</u> <u>Ritz v. Gagan</u>, 513 U.S. 1183 (1995). "State attorneys . . . who perform functions analogous to those of a prosecutor . . . are absolutely immune from suit under section 1983 concerning activities intimately associated with the judicial process." <u>Scott v. Hern</u>, 216 F.3d 897, 908 (10th Cir. 2000)(internal quotations and citations omitted). "The traditional requirements for extending absolute immunity are satisfied by a government attorney" defending state officials in prisoner civil rights litigation. <u>Murphy v. Morris</u>, 849 F.2d 1101, 1105 (8th Cir. 1988).

As the Tenth Circuit Court of Appeals recognized in <u>Gagan</u>, <u>supra</u>, "the determinative factor [in the immunity issue for state prosecutors] is advocacy because that is the prosecutor's main function." <u>Gagan</u>, 35 F.3d at 1475 (internal quotations and citation omitted). Plaintiff alleges in his Complaint that Defendant Lawson, in her capacity as an assistant attorney general for the State of Oklahoma, informed OSR official Defendant Bear that Plaintiff had filed a motion seeking a temporary restraining order in two other § 1983 actions, presumably based on Defendant Bear's actions although Plaintiff does not clearly describe the contents

of his motions seeking a restraining order.

Taken as true, Plaintiff's allegations in his Complaint against Defendant Lawson are speculative and fail to describe any specific action taken by Defendant Lawson outside of her traditional advocacy function. Accordingly, Defendant Lawson's Motion to Dismiss should be granted, and the cause of action against her in her individual capacity should be dismissed with prejudice on the basis of absolute immunity.

VI. Qualified Immunity

Assuming the truth of Plaintiff's allegations in his Complaint, Plaintiff seeks to hold Defendant Lawson liable under § 1983 for informing Defendant Bear, an OSR official, that Plaintiff had sought a temporary restraining order in two other § 1983 actions. Even if Defendant Lawson is not entitled to absolute prosecutorial immunity, Defendant Lawson is entitled to qualified immunity.

Under the doctrine of qualified immunity, "government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993)(internal quotation omitted). See also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. __ 131 S.Ct. 2074, 2080 (2011)(quoting Harlow, id.). District courts have "discretion to decide

which of the two prongs of qualified-immunity analysis to tackle first." Id. Thus, "[i]n resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." Leverington v. City of Colo. Springs, 643 F.3d 719, 732 (10th Cir. 2011)(quotations and ellipses omitted).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Thomas v. Durastanti, 607 F.3d 655, 669 (10th Cir. 2010( quotation omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.3d 1493, 1498 (10th Cir. 1992). "While there does not have to be a case that is factually identical, it must still be apparent to a reasonable officer in light of pre-existing law that his conduct was unlawful." Thomas, 607 F.3d at 669. "The plaintiff bears the burden of citing . . . what he thinks constitutes clearly established law." Id.

Taking judicial notice of public records[2], Plaintiff did, indeed, have a § 1983 action pending on appeal before the Tenth Circuit Court of Appeals in February 2012 at the time he alleged Defendant Bear took retaliatory action against Plaintiff. In a decision entered

---

[2]Guttman v. Khalsa, 669 F.3d 1101, 1127 n. 5 (10th Cir. 2012)(noting court may take judicial notice of public records, including district court filings.

February 22, 2012, the Tenth Circuit Court of Appeals described this action:

> In these consolidated appeals, Plaintiff challenges the district court's dismissal of his 42 U.S.C. § 1983 prisoner complaint based on his failure to exhaust administrative remedies. Plaintiff is an inmate in the custody of the Oklahoma Department of Corrections. At all times relevant to this case, he was incarcerated in a private prison operated by the Corrections Corporation of America. In his complaint, Plaintiff alleged that ODOC, CCA, and various correctional officials and prison employees violated his constitutional rights by, inter alia, forcing him to remain in a lock-down cell for three months with a cell-mate who was mentally ill, aggressive, and HIV-positive.

Davis v. Corrections Corp. of America, 463 Fed.Appx. 748, 749 (10th Cir. Feb. 22, 2012)(unpublished order). The Tenth Circuit found that the action should not have been dismissed on exhaustion grounds and reversed and remanded the action to the United States District Court for the Eastern District of Oklahoma for further proceedings. Id.

The attorney identified in the Tenth Circuit's decision as representing the Defendants in that action is a private attorney, not Defendant Lawson. Defendant Lawson is also not identified as an attorney in the action at the time of the earlier district court decision. Davis v. Corrections Corp. of America, 2011 WL 1304639 (E.D. Okla. Mar. 31, 2011)(unpublished opinion and order).

"An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of [his] constitutional rights." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th cir. 1998)(quotation omitted). The plaintiff must demonstrate "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to

11

engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)(internal quotations and citations omitted), cert. denied, 533 U.S. 916 (2001).

While Plaintiff clearly was involved in protected activity in the form of a separate §1983 action in which he sought damages from ODOC officials and employees of a private prison, Plaintiff has provided only speculative allegations that Defendant Lawson knew that he had been harassed at OSR or that Defendant Lawson knew that Plaintiff had sought a temporary restraining order in two other § 1983 actions. Defendant Lawson was not involved as counsel in Plaintiff's other § 1983 action, and, as Plaintiff admits in his responsive pleading, Defendant Bear is not a defendant in Plaintiff's other § 1983 action. At most, Plaintiff has alleged that Defendant Lawson negligently informed a correctional official that he had been named in an inmate's motion seeking a temporary restraining order and that Defendant Lawson negligently failed to prevent the correctional official from taking retaliatory action against the inmate, even though Defendant Lawson had read Plaintiff's request for a temporary restraining order, which Plaintiff alleges described how he had "been harassed by a number of staff at the Oklahoma State Reformatory." Complaint, at 3. This allegation of negligent conduct is not sufficient to assert a clearly established constitutional right. See, e.g., Daniels v. Williams, 474 U.S. 327 (1986)(Fourteenth Amendment provides no remedy for custodial official's negligence); Davidson v. Cannon, 474 U.S. 344 (1986)("[T]he protections of the Due Process Clause, whether procedural or substantive, are

. . . not triggered by lack of due care . . . ."). Therefore, Defendant Lawson's Motion to Dismiss Plaintiff's claims against her in her individual capacity should be granted as Defendant Lawson is entitled to qualified immunity from Plaintiff's claim for damages under § 1983.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendant Lawson's Motion to Dismiss (Doc. # 26) be GRANTED and that Plaintiff's cause of action against Defendant Lawson be DISMISSED with prejudice. Plaintiff is advised of the right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by August 29th, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this   9th   day of   August  , 2012.

*Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE