IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

EZEKIEL DAVIS,                          )
                                        )
            Plaintiff,                  )
                                        )
                                        )        CIV-12-330-HE
v.                                      )
                                        )
CARL BEAR, et al.,                      )
                                        )
            Defendants.                 )

THIRD SUPPLEMENTAL REPORT  AND  RECOMMENDATION

In his 42 U.S.C. § 1983 Complaint filed March 27, 2012, Plaintiff alleges a number

of constitutional deprivations by numerous correctional officials, including the denial of his

right of access to the courts, the use of excessive force, due process violations, and a "Civil

Conspiracy," for which he seeks compensatory damages and, in a separate pleading, a

permanent injunction.[1] (Docs. # 1, 71).  The matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

Plaintiff's § 1983 action relates to his previous confinement at Oklahoma State

---

[1]Plaintiff's claims against Defendant Lawson, an Oklahoma Assistant Attorney General, were previously dismissed. Order (Doc. # 40).

1

Reformatory ("OSR").[2]  Defendants Blevins, Barber, Bethea, Duty, Hendrix,[3] McCollum, and Tate ("Defendants") have moved to dismiss the cause of action pursuant to Fed.R. Civ.P. 12(b)(6) or, alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56(b). (Doc. #37). Plaintiff has responded to the Motion. (Doc. #41).

I. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  All well-pleaded facts, as distinguished from conclusory allegations, are accepted as true, and those facts are viewed in the light most favorable to the non-moving party. Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005). To survive a motion to dismiss, a complaint must present factual allegations that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This review contemplates the assertion of "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  Thus, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 558.

A *pro se* plaintiff's complaint must be broadly construed under this standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).

---

[2]After he filed his Complaint, Plaintiff was transferred to Davis Correctional Facility ("DCF").

[3]In his dispositive motion, Defendant Hendrix states that Plaintiff misspelled his last name as "Hendericks" in the Complaint.  In light of this statement, Defendant Hendrix will be identified using the correct spelling of his last name.

However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). See Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached to it as exhibits. Hall, 935 F.2d at 1112.

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Burke, 462 U.S. at 1258 (internal quotation marks and citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations

omitted).

II. Background and Claims

Plaintiff is incarcerated in the custody of the Oklahoma Department of Corrections ("ODOC").  In his 22-page Complaint, Plaintiff names as Defendants OSR officials Mr. Bear, Mr. Duty, Mr. Hendrix, Mr. Barber, Mr. Tate, OSR Warden McCollum, OSR law librarian Ms. Bethea, and ODOC Department of Internal Affairs administrator Mr. Blevins.[4]

In count one, Plaintiff alleges a violation of his First Amendment right of access to the courts by Defendants Bear and Bethea.  Plaintiff also alleges in count one that Defendants Bear and Bethea conspired to deny him access to the courts and retaliated against him.  As motivation for the alleged retaliation, Plaintiff contends that he previously sought a restraining order against Defendant Bear in a pending action in the Tenth Circuit Court of Appeals and that he had previously corresponded with Defendant Blevins concerning an alleged "threat" made to him by Defendant Bear.

In count two, Plaintiff alleges that his Eighth Amendment rights were violated when Defendants Duty, Hendrix, Barber, and Bear used excessive force on Plaintiff on February 14, 2012.  He also alleges in count two that Defendants Bear, Bethea, Duty, Hendrix, Barber, McCollum, and Tate conspired to use excessive force upon Plaintiff in retaliation for Plaintiff seeking a restraining order against Defendant Bear in another case. Complaint, at 9.

In count three, Plaintiff alleges a deprivation of his Fourteenth Amendment due

---

[4]See fn. 1.

process rights concerning two allegedly false misconducts for the offenses of Using Abusive Language and Menacing issued against Plaintiff and alleged due process deprivations in the misconduct proceeding for these offenses conducted at OSR.

In count four, Plaintiff alleges that Defendants Bear, Bethea, McCollum, Duty, Hendrix, and Barber "participated in a section 1985 [and] 1986 civil conspiracy." Complaint, at 16.

The majority of the claims set forth in the Complaint stem from the same alleged incident. Plaintiff alleges that on February 14, 2012, he went to OSR's law library and asked the inmate law clerk there "for a disbursement because I needed copies and postage to send out legal mail." Complaint, at 4. Plaintiff asserts that the inmate informed Plaintiff that Defendant Bear, "the only staff member . . . in the law library" at the time, would not allow the inmate to make copies for Plaintiff. Plaintiff contends Defendant Bear then advised Plaintiff copies would not be made for Plaintiff because Plaintiff was without funds to pay for the copies. Plaintiff states that he advised Defendant Bear he was indigent but that Bear again refused to make copies for Plaintiff. Plaintiff alleges he waited about 45 minutes and then returned to the law library and asked Defendant Bear when the law librarian, Ms. Bethea, would return, at which time Defendant Bear called for correctional officers to remove Plaintiff from the law library.

Plaintiff alleges that Defendants Duty and Barber came to the law library and directed Plaintiff to "cuff-up." Plaintiff alleges he "told them I have done nothing to warrant being cuffed-up" and placed his hands on the counter whereupon the two officers grabbed his

hands and twisted his arms behind his back in a rough manner.  Plaintiff alleges he asked the officers "why are they being so ruff [sic], that I had done nothing wrong" but the officers "kept on twisting my wrist so I told them since they are trying to hurt me I'm going to sit on the floor until they bring the camera." Complaint, at 4, 10.  Plaintiff contends he sat down and another officer then arrived with the camera. Complaint, at 10. Plaintiff admits he "did not stand up willingly" and that Defendants Duty and Hendrix lifted Plaintiff up "by [his] arms" and "twisted my wrist when I refused to stand, because I was talking into the camera asking why was I being treated this way because I wanted copies.  Capt. [Hendrix] and Lt. Barber twisted my wrist so hard that I yelled out in pain and when I told them to stop, Capt. [Hendrix] and Lt. Barber twisted my wrist again so hard that I yelled out in pain again." Complaint, at 4-5, 10.

Plaintiff alleges the officers lifted his arms up toward his head and pushed Plaintiff toward the door.  He alleges that Defendant Tate arrived and that Defendant Tate then retrieved Plaintiff's "legal papers" and "we all went back inside and the copies where [sic] made." Complaint, at 5.  Plaintiff alleges the handcuffs were removed by Defendant Duty after Plaintiff was returned to his cell, that he was then escorted to the medical unit of the facility by several officers, and that after he was treated at the medical unit he was escorted to the segregation housing unit.

Plaintiff alleges in the Complaint that Defendant Bear "found out" that Plaintiff had

requested a "restraining order" against him.  Complaint, at 3.[5] Plaintiff further states that

"less than a week" before the alleged incident he mailed a letter to Defendant Blevins in

which he complained about a "threat" made to him by Defendant Bear and that Defendant

Blevins responded to Plaintiff that Plaintiff's letter had been "passed . . . to the Division of

Institutions." Complaint, at 3.  Plaintiff surmises that Defendant Blevins "may have told

someone at OSR about the letter that I wrote to him." Id.

Plaintiff has been incarcerated since March 1990 serving a sentence of life

imprisonment for a first degree murder conviction.  Plaintiff's Consolidated Record Card

(CRC) maintained by ODOC reflects that he was transferred to OSR on September 15, 2010,

and he was transferred from OSR to DCF on April 3, 2012.  Plaintiff's CRC also reflects a

lengthy record of disciplinary misconducts. Special Report, Att. 1.

III. Section 1983 Challenge to Disciplinary Proceeding is Premature

Plaintiff seeks damages under 42 U.S.C. § 1983 for, *inter alia*, the alleged issuance

of two false misconducts on February 14, 2012.  He contends that Defendants filed the

allegedly false misconduct charges in retaliation for Plaintiff's exercise of various rights,

---

[5]Plaintiff identifies this case as "Davis v. Martha Jones et al. 04-7087." Complaint, at 2.  In Tenth Circuit Court of Appeals Case No. 04-7087, the Tenth Circuit affirmed the district court's dismissal of this action for failure to exhaust administrative remedies in April 2005. Davis v. Mullin, 125 Fed.Appx. 972 (10th Cir. April 20, 2005)(unpublished order).  Nothing in the appellate court's decision addresses a temporary restraining order.  Defendant Bear was not named as a defendant in another § 1983 action filed by Plaintiff in the United States District Court for the Eastern District of Oklahoma, and in the Tenth Circuit's decision affirming in part and reversing in part the district court's adverse decision in that action.  In its decision, the Tenth Circuit addressed only the issue of whether Plaintiff had exhausted administrative remedies concerning his claims. Davis v. Corr. Corp. of America, Nos. 11-7027 & 11-7044 (10th Cir. Feb. 22, 2012)(unpublished order).  The court does not mention a temporary restraining order.

including seeking a temporary restraining order against Defendant Bear in another action filed by Plaintiff and submitting a letter to Defendant Blevins concerning an alleged "threat" made to him by Defendant Bear. Plaintiff also alleges that the hearing officer failed to follow disciplinary hearing procedures and was biased.

Uncontroverted evidence in the record shows that on February 14, 2012, Plaintiff was charged with the disciplinary offenses of Using Abusive Language and Menacing. Brief in Support (Doc. # 48), att. 2 at 1, 7; Special Report (Doc. # 38), Ex. 23. Defendant Bear authored the offense report concerning the misconduct offense of Using Abusive Language, and Defendant Hendrix authored the offense report concerning the Menacing misconduct offense. Plaintiff was found guilty of the Menacing misconduct in a disciplinary hearing conducted on March 12, 2012. Brief in Support (Doc. # 48), Att. 2, at 18. Punishment for the misconduct conviction included the forfeiture of 365 days of earned credits. Id. Plaintiff was found guilty of the misconduct offense of Using Abusive Language in a disciplinary hearing conducted on March 12, 2012. Id., at 19. Punishment for the misconduct conviction included the forfeiture of 120 days of earned credits. Id.

Plaintiff's cause of action seeking damages for the alleged false and retaliatory misconduct charges should be dismissed for failure to state a claim for relief. In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court recognized that damages may not be recovered in a 42 U.S.C. §1983 action "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff first proves "that the conviction or

sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254." Id. at 487.  Three years later, in Edwards v. Ballisok, 520 U.S. 641 (1997), the Supreme Court extended the holding in Heck to actions under 42 U.S.C. § 1983 challenging prison disciplinary proceedings.  The Court concluded that a claim for damages and equitable relief brought by a state prisoner challenging the validity of procedures used to deprive the inmate of earned credits is not cognizable under 42 U.S.C. § 1983 unless the prisoner can demonstrate that the sanctions imposed for the misconduct have previously been invalidated. Edwards, 520 U.S. at 643.

Plaintiff has failed to demonstrate that the misconducts issued against him at OSR for Using Abusive Language and Menacing have been invalidated.  Therefore, his request for damages and other relief with respect to his claims in count three of false and retaliatory misconducts is premature under Heck and Balisok.  Defendants' Motion to Dismiss Plaintiff's claims in count three should be granted, and the claims in count three should be dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

IV. Plaintiff Has Failed to Exhaust Administrative Remedies

In count one, Plaintiff alleges that his First Amendment right of access to the courts was violated by Defendants Bear and Bethea, that Defendants Bear and Bethea conspired to deprive him of his right of access to the courts, and that Defendants Bear and Bethea denied Plaintiff his right of access to the courts in retaliation for other actions taken by Plaintiff,

including seeking a temporary restraining order against Defendant Bear in a previous action and corresponding with Defendant Blevins.

In count two, Plaintiff alleges that Defendants Duty, Hendrix, Barber, and Bear used excessive force against Plaintiff on February 14, 2012, and that Defendants Bear, Bethea, Duty, Hendrix, Barber, McCollum, and Tate conspired to use excessive force against Plaintiff in retaliation "for filing a restraining order against [Defendant Bear] in Plaintiff's pending case in the Eastern District." Complaint, at 9.

Defendants assert in their dispositive motion that Plaintiff has failed to exhaust available administrative remedies concerning these claims. As both parties have submitted and relied on evidentiary documents outside of the pleadings and Plaintiff was advised of his obligations in responding to Defendants' Motion under Fed.R.Civ.P. 12 and 56, the Defendants' Motion will be considered as one brought pursuant to Rule 56 seeking summary judgment.

Prior to filing an action under 42 U.S.C. § 1983 challenging prison conditions, the Prison Litigation Reform Act ("PLRA"), enacted in 1996, requires a prisoner to exhaust his administrative remedies. 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This mandatory exhaustion requirement, see Jones v. Bock, 549 U.S. 199, 211 (2007), applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle,

534 U.S. 516, 524, 532 (2002).   To properly exhaust administrative remedies, a plaintiff must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted).   "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

Having asserted the affirmative defense of failure to exhaust administrative remedies, Defendants bear the burden of proof. See Jones v. Bock, 549 U.S. 199, 215-216 (2007)(holding failure to exhaust administrative remedies is affirmative defense); Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant.").

Defendants must therefore demonstrate the absence of a disputed material fact on the issue of exhaustion. See Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997).   If Defendants satisfy this burden, Plaintiff would have the obligation to "demonstrate with specificity the existence of a disputed material fact.  If the [P]laintiff fails to make such a showing, the affirmative defense bars his claim[s], and the [Defendants are] then entitled to summary judgment as a matter of law." Id.

The procedure for exhausting administrative remedies for Oklahoma inmates is set forth in ODOC Policy OP-090124.  Under this administrative process, the prisoner must first attempt to informally resolve the matter with the appropriate staff member within three days of the incident. See Motion to Dismiss or in the Alternative Motion for Summary Judgment

11

("Motion") (Doc. # 37), Ex. 1 (OP-090124), at 5.  If that attempt is unsuccessful, the inmate must submit a Request to Staff ("RTS") addressed to the appropriate staff member within seven days of the incident. See id. at 6.  If the inmate is still not satisfied, the inmate may file a grievance with the reviewing authority within fifteen days of the incident or of the staff's response to his RTS, whichever is later. See id. at 6-10.  If the inmate remains dissatisfied with the result, the inmate may appeal to the ODOC administrative review authority or, where appropriate, the chief medical officer within fifteen days of the reviewing authority's response. See id. at 10-11. After this step, the administrative procedure would be completed. Id. at 23.  See Thomas v. Parker, 609 F.3d 1114, 1117 (10th Cir. 2010)("The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority."), cert. denied, __ U.S. __, 131 S.Ct. 1691 (2011).

In Oklahoma, inmates who have abused the grievance process may be placed on grievance restrictions. Motion (Doc. # 37), Ex. 1, at 14-15. When an inmate is placed on grievance restrictions, the inmate may participate in the grievance process but only if he or she first satisfies additional requirements, including listing all previous grievances and their dispositions. Id. at 15.

In his Complaint, Plaintiff asserts that he attempted to exhaust his administrative remedies but that he had been placed on grievance restrictions, that his placement on grievance restrictions was arbitrary and retaliatory in nature, and that these restrictions hindered his ability to exhaust available administrative remedies.  Complaint, at 19-20.

The uncontroverted record reflects that Plaintiff was warned in writing in September 2011 by Defendant Bear, in his capacity as OSR Warden's Assistant, that he had submitted a grievance which constituted harassment of prison staff and that the submission of further grievances of this nature would result in Plaintiff being placed on grievance restrictions for twelve months. Special Report (Doc. # 38), Ex. 17.  In October 2011, Plaintiff was placed on grievance restrictions, and on December 13, 2011, the grievance restrictions were extended for a twelve month period from that date because Plaintiff had submitted a grievance that did not comply with OP-090124's requirements for inmates on grievance restrictions. Response (Doc. # 41), att. 1, at 11, 14.

In response to Defendants' Motion, Plaintiff asserts that he submitted an "Emergency [and] Sensitive Grievance" on February 20, 2012, and that the grievance was answered on June 14, 2012. Plaintiff's Response (Doc. # 41), at 7.  Plaintiff asserts that he "did not file a regular grievance" because he "thought that he was on grievance restriction." Id.

The record reflects that Plaintiff submitted an "Emergency [and] Sensitive Grievance" to ODOC's administrative review authority.  Although the grievance was dated February 20, 2012, the grievance was date-stamped as received by ODOC's administrative review authority on June 6, 2012. Plaintiff's Response (Doc. # 41), att. 1, at 3.  In this grievance, Plaintiff asserted that Defendant Bear denied his right of access to the courts on February 14, 2012, by refusing to make copies for Plaintiff, that Defendant Bear was "harassing and retaliating" against Plaintiff, and that Defendants Duty, Hendrix, and Barber used excessive force by twisting Plaintiff's wrists when they removed Plaintiff from the prison's law library.

Id. at 3-4.  The grievance was returned to Plaintiff unanswered because it included more than one issue and was not of a sensitive/emergency nature. Id. at 1.  Plaintiff was advised that he should follow the standard grievance process to present his grievances. Id.  Plaintiff was also advised by ODOC's administrative review authority in a letter dated May 25, 2012, that the issues included in his recent correspondence to the ODOC General Counsel's office "constitute grievances" and should be pursued using ODOC's administrative grievance procedure, ODOC Policy OP-090124.

Plaintiff asserts that his emergency/sensitive grievance was not timely answered within 48 hours. Response (Doc. # 41), at 7.  However, his own documentary evidence attached to his responsive pleading shows that the emergency/sensitive grievance was received in the office of ODOC's administrative review authority on June 6, 2012.  Although the "failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable," Jernigan, 304 F.3d at 1032, ODOC's grievance policy for the submission of emergency or sensitive grievances provides that a response must be provided to the inmate within 48 hours only if it is determined that the grievance "is in fact an emergency or sensitive grievance." Motion, Ex. 1, at 13.  This provision does not apply here because ODOC's administrative review authority determined that Plaintiff's grievance was not of an emergency or sensitive nature and he must therefore follow ODOC's regular administrative grievance procedure.

Plaintiff has provided no evidence demonstrating that he pursued or completed ODOC's administrative grievance procedure concerning the issues raised in counts one and

14

two of the Complaint.  Plaintiff's placement on grievance restrictions in October and December 2011 did not obstruct his ability to exhaust the available administrative remedies. ODOC's grievance policy prescribes additional requirements for inmates placed on grievance restrictions, but the policy's additional requirements do not render administrative remedies unavailable to Plaintiff.  Additionally, Plaintiff's letter to the ODOC General Counsel's office does not demonstrate exhaustion of the administrative grievance procedure provided by ODOC.  See Response (Doc. # 41), att. 2, at 9-10.

As no material issue of fact remains for trial with respect to the issue of Plaintiff's exhaustion of administrative remedies, Defendants' motion for summary judgment concerning all of Plaintiff's claims in counts one and two should be granted due to Plaintiff's failure to exhaust his available administrative remedies.

V. Failure to State a Claim of a Conspiracy under § 1985 or § 1986

Plaintiff alleges in count four that Defendants Bear, Bethea, McCollum, Duty, Hendrix, and Barber "participated in a section 1985 [and] 1986 civil conspiracy."  Plaintiff's allegations in count four fail to state a claim for relief under 42 U.S.C. §§ 1985 or 1986. Under 42 U.S.C. § 1985(3), a conspiracy to deprive a plaintiff of equal protection or equal privileges or immunities requires that the conspiracy be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1995)(internal quotations and citation omitted).  Although Plaintiff alleges he is an African-American, Complaint, at 8, he has not alleged facts sufficient to state a plausible claim of discriminatory animus.  Further, because he has not stated a claim under

42 U.S.C. § 1985, he has not stated a claim under § 1986. See Taylor v. Nichols. 559 F.2d 561, 568 (10th Cir. 1977)("Inasmuch as the Section 1985 action is insufficient, the allegations under 42 U.S.C. Section 1986 also fail. . . . There being no valid Section 1985 claim, there can be no action under Section 1986.").  Accordingly, Defendants' motion seeking dismissal of the claims in count four should be granted[6], and Plaintiff's claims in count four should be dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants Blevins, Barber, Bethea, Duty, Hendrix, McCollum, and Tate's Motion for Summary Judgment (Doc. # 37) be GRANTED as to Plaintiff's claims in counts one and two of the Complaint and that judgment enter in favor of these Defendants and against the Plaintiff as to these claims. It is further recommended that Defendants Blevins, Barber, Bethea, Duty, Hendrix, McCollum, and Tate's Motion to Dismiss (Doc. # 37) be GRANTED as to Plaintiff's claims in counts three and four and that Plaintiff's claims in counts three and four of the Complaint be dismissed for failure to state a claim upon which relief may be granted.

---

[6]Although Defendants do not specifically seek dismissal of these claims brought under 42 U.S.C. §§ 1985 and 1986, Defendants have asserted in their dispositive motion that dismissal is warranted under Rule 12(b)(6) because Plaintiff has failed to state a claim of conspiracy.

The parties are advised of their respective right to file an objection to this Third Supplemental Report and Recommendation with the Clerk of this Court by ___January 30th, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Third Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Third Supplemental Report and Recommendation partially disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ___10th___ day of ___January___, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE